**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dian M. Mendoza | No. CV 12-00078-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff's appeal from the Administrative Law Judge's denial of Plaintiff's Title II application for disability insurance benefits.

**I.      PROCEDURAL BACKGROUND**

On June 12, 2007, Plaintiff Dian M. Mendoza filed a Title II application for a period of disability and disability insurance benefits with the Commissioner of the Social Security Administration (the "Commissioner"), alleging that her disability began on September 30, 2006.    (Doc. 12-3 at 18).    Plaintiff's claim was denied initially on September 13, 2007, and upon reconsideration it was denied again on June 19, 2008. (*Id*.).

On July 15, 2008, Plaintiff filed a request for a hearing with an Administrative Law Judge ("ALJ").  (*Id*.).  Plaintiff appeared and testified before the ALJ on March 4, 2010.  (*Id*.).  On April 13, 2010, the ALJ issued a decision finding that Plaintiff suffered from severe fibromyalgia ("FM"), however, the ALJ still found Plaintiff was able to perform past relevant work as a housekeeper.  (*Id*. at 15-30).  Accordingly, the ALJ

denied Plaintiff's claim for disability insurance benefits.  (*Id*.).

Following the ALJ's denial of Plaintiff's claim, on June 11, 2010, Plaintiff filed an appeal with the Appeals Council, Office of Hearings and Appeals, Social Security Administration.  (*Id*. at 13).  On November 17, 2011, the Appeals Council, denied review of the ALJ's decision.  (*Id*. at 2-7).

On January 12, 2012, Plaintiff filed her Complaint for judicial review of the Commissioner's decision denying her claim for disability insurance benefits with this Court, which is the subject of this appeal.  (Doc. 1).  On September 13, 2012, Plaintiff filed an opening brief (the "Brief") in support of vacature of the decision of the Commissioner on Plaintiff's claim for a period of disability and disability insurance benefits.  (Doc. 15).  In the Brief, Plaintiff argues that the Court should vacate the ALJ's decision because it contains procedural and legal error as it lacks substantial justification to support the ALJ's conclusions.  (*Id*. at 1, 6).

## II.   LEGAL STANDARD

The Commissioner's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error."  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (quotation omitted).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ."  *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted).  In determining whether there is substantial evidence to support a decision, this Court considers the record as a whole, weighing both the evidence that supports the ALJ's conclusions and the evidence that detracts from the ALJ's conclusions.  *Reddick*, 157 F.3d at 720. "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching h[er] findings, the ALJ is entitled to draw inferences logically flowing from the evidence."  *Gallant*, 753 F.2d at 1453

(citations omitted).   If there is sufficient evidence to support the Commissioner's determination, the Court cannot substitute its own determination.  *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).   The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities.  *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).   Thus, if on the whole record before this Court, substantial evidence supports the Commissioner's decision, this Court must affirm it.  *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g).

## A.   Definition of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show, among other things, that she is "under a disability." 42 U.S.C. § 423(a)(1)(E).  The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *Id*. at § 423(d)(1)(A).   A person is "under a disability only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id*. at § 423(d)(2)(A).

## B.   Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims.  20 C.F.R. § 404.1520; *see also Reddick*, 157 F.3d at 721 (describing the sequential process).   A finding of "not disabled" at any step in the sequential process will end the ALJ's inquiry and the claim will be denied.  20 C.F.R. § 404.1520(a)(4).   The claimant bears the burden of proof at the first four steps, but the burden shifts to the ALJ at the final step. *Reddick*, 157 F.3d at 721.

The five steps are as follows:

First, the ALJ determines whether the claimant is "doing substantial gainful

activity." 20 C.F.R. § 404.1520(a)(4)(i).  If so, the claimant is not disabled.

Next, if the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment."  20 C.F.R. § 404.1520(a)(4)(ii).  A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  *Id*. at § 404.1520(c).  Basic work activities means the "abilities and aptitudes to do most jobs."  *Id*. at § 404.1521(b).  Further, the impairment must either be expected "to result in death" or "to last for a continuous period of twelve months."  *Id*. at § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)).  The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

Third, having found a severe impairment, the ALJ next determines whether the impairment "meets or medically equals the criteria of any of the listings in the Listing of Impairments in appendix 1, subpart P of 20 CFR part 404 (appendix 1)."  SSR 12-2p, 2012 WL 3104869 at *6 (July 25, 2012).  If so, the claimant is found disabled without considering the claimant's age, education, and work experience.  20 C.F.R.§ 404.1520(d).

FM, however, cannot meet a listing in appendix 1 because FM is not a listed impairment.  At step 3, therefore, the ALJ determines whether FM medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment.  SSR 12-2p at *6.

When a claimant's impairment(s) does not meet or equal a listed impairment under appendix 1, the ALJ will assess a claimant's Residual Functional Capacity ("RFC").  *Id*. The ALJ bases the RFC assessment on all relevant evidence in the case record.  *Id*.  The ALJ considers the effects of all of the claimant's medically determinable impairments, including impairments that are not severe.  *Id*.  For a person with FM, the ALJ will consider a longitudinal record whenever possible because the symptoms of FM can wax and wane so that a person may have bad days and good days.  *Id*.

- 4 -

At steps 4 and 5, the ALJ uses the RFC assessment to determine whether the claimant is capable of doing any past relevant work (step 4) or any other work that exists in significant numbers in the national economy (step 5). *Id*.; 20 C.F.R. § 404.1520(a). If the person is able to do any past relevant work, the ALJ will find that he or she is not disabled. *Id*. If the person is not able to do any past relevant work or does not have such work experience, the ALJ determines whether he or she can do any other work. *Id*. The usual vocational considerations apply (age, education, and work experience). *Id*.; 20 C.F.R. § 404.1520(g)(1). If the claimant can make an adjustment to other work, then she is not disabled. If the claimant cannot perform other work, she will be found disabled. As previously noted, the ALJ has the burden of proving the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

With regard to steps 1-5, in this case, the ALJ found that Plaintiff: (1) had satisfied the first step and had not engaged in substantial gainful activity since September 30, 2006 (Doc. 12-3 at 20), (2) had fulfilled the second step and shown that she had the following sever impairments: osteoarthritis, FM, depressive disorder, and anxiety disorder (*id*.), however, the ALJ found, (3) that Plaintiff did not have an impairment or combination of impairments specifically listed in the regulations (*id*. at 20-22), and (4) that Plaintiff had the RFC to perform light work as defined by the regulations with restrictions (*id*. at 22-25). As a result of this analysis, the ALJ found that Plaintiff is "capable of performing past relevant work as a housekeeper" and, thus, found that Plaintiff was not disabled as defined in the Social Security Act. (*Id*. at 25-26).

## III.   ANALYSIS

Plaintiff's central objection to the ALJ's findings is that the ALJ committed procedural error by failing to articulate substantial justification for the ALJ's conclusions. (Doc. 15 at 6). Specifically, Plaintiff argues that, (1) the ALJ failed to explain how the ALJ found Plaintiff able to perform her past work when the ALJ assessed restrictions that the state's vocational expert stated would preclude Plaintiff from performing her past work (*id*. at 7-8), (2) that the ALJ failed to properly weigh medical source opinion

evidence (*id*. at 8-19), (3) that the ALJ failed to properly weigh subjective complaints (*id*. at 19-23), and (4) that the ALJ failed to properly weigh third party reporting (*id*. at 23-24).  The Court will address each of Plaintiff's arguments in turn.

### A.    Whether the ALJ Erred by not Addressing Testimony Given by Vocational Expert

First, Plaintiff argues that the ALJ committed procedural error because the ALJ failed to address Defendant's vocational expert's answer to one question, where Plaintiff's attorney asked "if we were to assume an individual had moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, or pace, would such an individual be able to perform any of [Plaintiff's] past work?" and the vocational expert answered "no."  (Doc. 15 at 7-8) (citing testimony at (Doc. 12-3 at 55)).

The vocational expert notably also testified that Plaintiff's past work as a housekeeper was unskilled light work (Doc. 12-3 at 51) and that an individual with the RFC similar to Plaintiff's would be able to perform that job as typically performed in the national economy (*id*. at 52-53).   Upon considering all of the evidence, the ALJ found that Plaintiff had the RFC to perform light work reduced by limitation for balancing and stooping more than frequently; climbing, kneeling, crouching, and crawling more than occasionally; and performing work requiring concentrated exposure to extreme cold or more than simple repetitive work with minimal interactions with others.  (*Id*. at 22).  Therefore, Plaintiff's argument that the ALJ erred is not persuasive.  According to the RFC found by the ALJ and the explicit testimony of the vocational expert, Plaintiff could perform her past work as a housekeeper, which is exactly what the ALJ held.  The Court finds there was sufficient evidence to support the ALJ's decision, therefore, the Court cannot substitute its own determination.  *See Young*, 911 F.2d at 184.

### B.    Whether the ALJ Properly Weighed Medical Source Opinion Evidence

Next, Plaintiff argues that the ALJ failed to properly weigh medical source opinion evidence.  Plaintiff's argument concerns how the ALJ considered evidence of

Plaintiff's physical conditions (Doc. 15 at 8-15), and how the ALJ considered evidence of Plaintiff's psychological conditions (*id*. at 15-19).

### 1. The ALJ's Consideration of Evidence of Plaintiff's Physical Conditions

The central question before the Court is whether the ALJ erred in not following the assessment of the examining physician and finding Plaintiff could perform past work as a housekeeper.  Essentially, Plaintiff argues that the ALJ gave too much weight to the medical assessment of the state reviewer, Dr. John Kurtin, and improperly did not give enough weight to the medical assessment of Plaintiff's treating rheumatologist, Dr. Nolan.  (Doc. 15 at 8-15).

The ALJ found Plaintiff did in fact suffer from the severe physical impairments FM and osteoarthritis.  (Doc. 12-3 at 20).  Dr. Nolan diagnosed and treated Plaintiff for these conditions.  However, "[t]he mere existence of an impairment is insufficient proof of a disability."  *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (citing *Sample v. Schweiker*, 694 F.2d 639, 642–43 (9th Cir. 1982)).  Disability has "a severity and durational requirement for recognition under the [Social Security] Act that accords with the remedial purpose of the Act."  *Flaten v. Sec'y of Health & Human Svcs*., 44 F.3d 1453, 1459 (9th Cir. 1995).  "A claimant bears the burden of proving that an impairment is disabling."  *Matthews*, 10 F.3d at 680 (quoting *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985)).  "The applicant must show that [s]he is precluded from engaging in not only h[er] 'previous work,' but also from performing 'any other kind of substantial gainful work' due to such impairment."  *Id*. (quoting 42 U.S.C. § 423(d)(1)(A)).  The conflicting opinions between Dr. Nolan and Dr. Kurtin center on the determination of Plaintiff's RFC and whether Plaintiff could perform past relevant work as a housekeeper.

Dr. Nolan found Plaintiff could only lift and carry less than ten pounds, sit three hours in an eight-hour workday, stand and walk less than two hours in an eight-hour workday, that Plaintiff was limited to occasional use of her upper and lower extremities, could occasionally bend, reach, and balance, should never crawl, climb, stoop, crouch, or

kneel, should always avoid unprotected heights, moving machinery, and driving automotive equipment, and should avoid moderate exposure to extreme temperature. (Doc. 12-3 at 23).  On the other hand, Dr. Kurtin found Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, that she could stand, walk, and sit six hours in an eight-hour workday, that she could frequently balance and stoop, occasionally climb, kneel, crouch, and crawl, and that she should avoid concentrated exposure to extreme cold.  (*Id*. at 22).

Dr. Nolan's assessment effectively meant that Plaintiff would be unable to perform her past work as a housekeeper.  The ALJ relied, in part, on Dr. Kurtin's assessment in finding that Plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(b) and, further, that Plaintiff was capable of performing past relevant work as a housekeeper.

The Court must determine whether there is substantial evidence supporting the ALJ's decision to give more credence to Dr. Kurtin's assessment.  The ALJ is responsible for resolving conflicts in the medical record.  *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003) (citing *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002)).

> Those physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); 20 C.F.R. §§ 404.1527(d), 416.927(d).  As such, the ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on "clear and convincing reasons."  *Lester*, 81 F.3d at 830–31. Where such an opinion is contradicted, however, it may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record."  *Id*.

*Carmickle v. Comm'r, Soc. Sec. Admin*., 533 F.3d 1155, 1164 (9th Cir. 2008). Accordingly, because Dr. Nolan's assessment was contradicted, the Court looks to whether the ALJ articulated specific and legitimate reasons for disregarding Dr. Nolan's assessment, supported by such relevant evidence as a reasonable mind might accept as

1   adequate to support a conclusion.  *Reddick*, 157 F.3d at 720.

2       The ALJ explained three specific and legitimate reasons why "little weight [was]

3   given to Dr. Nolan's opinion."  (Doc. 12-3 at 23).  First, "[Dr. Nolan] did not indicate

4   what evidence was relied on in forming his opinion."  (*Id*.).  Second, "Dr. Nolan's

5   opinion is inconsistent with his treatment notes which indicate the claimant's wrists,

6   elbows, shoulders, hips, knees, and ankles are non-tender on range of motion, no

7   synovitis, [and] radiographic evidence of early and only slight osteoarthritis of her hips

8   and knees."  (*Id*.).  Finally, Plaintiff "report[ed] that her pain medication helps her pain

9   without side effects."  (*Id*.).

10      Plaintiff argues that because Defendant does not allege that Dr. Nolan's opinion

11  was in conflict with another "treating or examining physician," Dr. Nolan's opinion is

12  entitled to great weight.  (Doc. 25 at 3).  Plaintiff contends that the opinion of a non-

13  examining physician like Dr. Kurtin cannot by itself constitute substantial evidence that

14  justifies the rejection of the examining physician's assessment.  (*Id*. at 4).  Plaintiff cites

15  *Pitzer v. Sullivan*, and *Gallant v. Heckler*, for this proposition.  (*Id*.).

16      In *Pitzer*, the examining physician's opinion was disregarded by the ALJ without

17  setting forth legitimate reasons and the plaintiff's disability claim was denied.  908 F.2d

18  502, 506 (9th Cir. 1990).  The Ninth Circuit Court of Appeals found that a

19  "nonexamining physician's conclusion, with nothing more, does not constitute substantial

20  evidence."  *Id*. at 506 n. 4.  In *Gallant*, "the report of [a] non-treating, non-examining

21  physician, combined with the ALJ's own observance of [the] claimant's demeanor at the

22  hearing" did not constitute "substantial evidence" and, therefore, did not support the

23  Commissioner's decision to reject the examining physician's opinion that the claimant

24  was disabled due to pain.  753 F.2d at 1456.

25      In this case, unlike the circumstances in both *Pitzer* and *Gallant*, the ALJ relied on

26  more than just Dr. Kurtin's assessment and the ALJ's observance of Plaintiff at the

27  hearing.  The ALJ explained that "in making this finding, the [ALJ] considered all

28  symptoms the extent to which these symptoms can reasonably be accepted as consistent

with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 . . . ."  (Doc. 12-3 at 22).  The ALJ made it clear that "great[er] weight [wa]s given to [Dr. Kurtin's] opinion because it [wa]s consistent with the record as a whole."  (Doc. 12-3 at 23).

The ALJ considered Plaintiff's symptoms, objective medical evidence, and medical opinion evidence.  The objective medical evidence explicitly cited by the ALJ (Doc. 12-3 at 22-23) included the physical assessment and medical evaluation of Plaintiff by J. Morelos, another State agency physician (Doc. 12-8 at 69-78) and the physical assessment of Dr. Kurtin (Doc. 12-9 at 45-52).  Further, the objective evidence in the "record as a whole," aside from Dr. Kurtin's assessment, revealed favorable functional findings of a non-tender neck with painless ranges of motion, full ranges of motion of all joints, including full hip and knee ranges of motion, non-tender wrist, elbow, shoulder, hip, knee, and ankle ranges of motion, and the ability to produce neat penmanship, as well as more general but nonetheless important findings of the absence of acute or only mild distress, non-tender extremities, the absence of shoulder, elbow, hand, knee, or ankle erythema or edema, and the absence of extremity joint synovitis.  (Doc. 21 at 8-9) (citing medical assessments performed by No Appointment MD (Doc. 12-9 at 87-98), Camelback Medical Plaza (Doc. 12-9 at 35-42), Dr. House (Doc. 12-9 at 80-85), and Dr. Nolan (Doc. 12-11 at 4-8)).  X-rays revealed only early, mild hip and knee osteoarthritis, and a normal left clavicle.  (*Id*. at 9).  The ALJ found this favorable objective medical evidence provided substantial evidence supporting the decision to deny Plaintiff's claim, particularly with respect to Plaintiff's osteoarthritis.  (*Id*.).

Objective evidence also showed pain and other medications were somewhat effective.  (*Id*.).  Providers noted that Plaintiff exhibited decreased overall fatigue and was smiling when reporting severe pain.  (*Id*.).  "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits."  *Warre v. Comm'r of Soc. Sec. Admin*., 439 F.3d 1001, 1006 (9th Cir. 2006) (citing *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004)); *Lovelace v.*

*Bowen*, 813 F.2d 55, 59 (5th Cir. 1987); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication)).

Further influencing the ALJ's decision, in addition to the objective evidence throughout the record that was consistent with Dr. Kurtin's assessment, was that Dr. Nolan's opinion was inconsistent with his treatment notes and Dr. Nolan did not indicate what evidence he relied on in forming his opinion.  (*Id.*).

Plaintiff attempts to make the argument that the normal objective findings cited by Defendant are not relevant in determining the extent of functional limitation arising out of FM.  (Doc. 25 at 5).  However, Social Security Ruling, SSR 12-2P, 2012 WL 3104869 (July 25, 2012), clearly states,

> [a]s with any claim for disability benefits, before we find that a person with an MDI of FM is disabled, we must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity.

SSR 12-2p at *2.

> If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, [the Commissioner] consider[s] all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms.

*Id.* at *5.  This is the type of objective evidence that the ALJ relied on in making the determination that Plaintiff could perform past relevant work.

The Court finds the evidence was at the very least susceptible to more than one rational interpretation by the ALJ.  Accordingly, the ALJ's conclusion must be upheld. *See Gallant*, 753 F.2d at 1453 (citations omitted).

- 11 -

### 2.     The ALJ's Consideration of Evidence of Plaintiff's Psychological Conditions

Plaintiff also argues that the ALJ failed to properly weigh the medical opinion evidence of Plaintiff's psychological conditions in determining Plaintiff's RFC and ability to perform past relevant work.  (Doc. 15 at 15-19).  In addition to Plaintiff's severe physical impairments, the ALJ found Plaintiff suffered from depressive disorder and anxiety disorder.  (Doc. 12-3 at 20).  However, the ALJ still found that Plaintiff was capable of performing past relevant work as a housekeeper.  (*Id*. at 25).  The ALJ determined that Plaintiff had not met her burden of proving that her psychological impairments were disabling.  *See Matthews*, 10 F.3d at 680 ("A claimant bears the burden of proving that an impairment is disabling. . . . The applicant must show that [s]he is precluded from engaging in not only h[er] 'previous work,' but also from performing 'any other kind of substantial gainful work' due to such impairment.") (citations omitted).

The State agency physician, Stephen Fair, Ph.D., and the consultative examiner, Charles House, Ph.D., Licensed Psychologist, both found Plaintiff was capable of performing activities consistent with her past work as a housekeeper.  (Doc. 12-3 at 23). The ALJ gave great weight to these opinions because they were consistent with the record as a whole and both opinions were made by "acceptable medical sources" under the Social Security Administration's policy interpretation ruling.  *See* SSR 06-03p, 2006 WL 2329939, at *1 (Aug. 9, 2006) ("Under our current regulations, 'acceptable medical sources' are: Licensed physicians (medical or osteopathic doctors); Licensed or certified psychologists.").

Plaintiff proffered the medical opinion of her counselor, Ms. Ariel Mindel (Doc. 12-9 at 71-88), and her nurse practitioner, Ms. Marian Letellier (Doc. 12-10 at 107-108), to make her case that her psychological impairments prevented her from working.  The ALJ explained that little weight was given to either opinion because neither opinion was made by an "acceptable medical source" nor was either opinion consistent with the treatment notes taken by Ms. Mindel and Ms. Letellier respectively.  (Doc. 12-3 at 24).

Plaintiff argues that the ALJ erred by agreeing with the assessments of Dr. Fair and Dr. House and that under SSR 06-03p the opinions of non-acceptable medical sources should not be given "little weight."  (Doc. 15 at 18).  SSR 06-03p states,

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists.  Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06-03p at *3.  Evidence from these sources will be evaluated in the same way evidence from acceptable medical sources would be evaluated.  "The weight to which such evidence may be entitled will vary according to the particular facts of the case, the source of the opinion, including that source's qualifications, the issue(s) that the opinion is about, and many other factors."  *Id.*

> The fact that a medical opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because, as we previously indicated in the preamble to our regulations at 65 FR 34955 , dated June 1, 2000, "acceptable medical sources" "are the most qualified health care professionals."  However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source.  For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source *and has provided better*

> *supporting evidence and a better explanation for his or her opinion.* Giving more weight to the opinion from a medical source who is not an "acceptable medical source" than to the opinion from a treating source does not conflict with the treating source rules in 20 CFR 404.1527(d)(2) and 416.927(d)(2) and SSR 96-2p, "Titles II and XVI: Giving Controlling Weight To Treating Source Medical Opinions."

*Id.* at \*5 (emphasis added).

While Plaintiff is correct that non-acceptable medical source opinion evidence "may" outweigh the opinion evidence of acceptable medical sources, Plaintiff has not shown that the ALJ erred by giving more weight to the opinions of Dr. Fair and Dr. House in this case. Ms. Mindel and Ms. Letellier did not "provide better supporting evidence and a better explanation for [their] opinion[s]," than Dr. Fair and Dr. House. As the ALJ explained, Dr. Fair's opinion was consistent with the record as a whole.

Plaintiff was capable of concentrating on simple work over an extended period of time. She demonstrated the ability to make good eye contact, show appropriate affect, she had a relaxed mood, normal speech, logical thought process, normal perception, good concentration, intact memory, good intelligence, and good insight and judgment throughout mental status examinations performed by both Ms. Mindel (Doc. 12-9 at 82-83) and Phoenix Interfaith Counseling (Doc. 12-10 at 8-9).

Accordingly, more than a mere scintilla of evidence supports the Commissioner's decision. "[T]he ALJ is entitled to draw inferences logically flowing from the evidence." *Gallant*, 753 F.2d at 1453. Therefore, the Court must affirm the ALJ's decision. *See Hammock*, 879 F.2d at 501; *see also* 42 U.S.C. § 405(g). The Court finds the ALJ did not err by giving more weight to the opinions of the State agency physician and the consultative examiner in finding Plaintiff was capable of performing past relevant work as a housekeeper.

## C.   Whether the ALJ Properly Weighed Subjective Complaints

Next, Plaintiff argues that the ALJ failed to properly weigh her subjective complaints. (Doc. 15 at 19-23). The parties dispute whether the ALJ must give clear and

convincing reasons for rejecting claimant's subjective complaints or whether the ALJ must make specific findings based on the record for discounting claimant's subjective complaints.  The District Court of California has addressed this issue in a well-reasoned opinion and this Court adopts that Court's reasoning in concluding that, to the extent there is actually any principled distinction between the two standards, the ALJ must make specific findings supported by the record to explain her credibility evaluation.[1]

---

[1] The District Court of California set forth its reasoning as follows:

> In *Bunnell*, the court addressed confusion regarding the standard for evaluating the credibility of subjective complaints and endorsed the standard set forth in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir.1986), *Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 583–584 (9th Cir.1988) and *Gamer v. Secretary of Health and Human Services*, 815 F.2d 1275, 1279 (9th Cir.1987).  *Bunnell*, 949 F.2d at 345.  The so-called "*Cotton* standard" requires the claimant to produce objective medical evidence of an underlying impairment that is reasonably likely to be the cause of the alleged pain.  Once that evidence is produced, the adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence fully corroborating the alleged severity of the pain.  *Bunnell*, 949 F.2d at 343, 345 (citing *Cotton*, 799 F.2d at 1407).  Rather, the adjudicator must "specifically make findings which support this conclusion.  These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain."  *Bunnell*, 949 F.2d at 345–46 (internal citation and quotation omitted).
>
> Some subsequent decisions have stated that, unless there is affirmative evidence that a claimant is malingering, the ALJ must articulate "clear and convincing" reasons for rejecting subjective complaints.  *See, e.g., Morgan v. Commissioner of the Social Security Administration*, 169 F.3d 595, 599 (9th Cir.1999); *Regennitter v. Commissioner of the Social Security Administration*, 166 F.3d 1294, 1296 (9th Cir.1999); *Reddick*, 157 F.3d at 722; *Light*, 119 F.3d at 792;

*Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.1995); *Smolen*, 80 F.3d at 1284; *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir.1995); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993). Other decisions state that the ALJ must make specific findings based on the record, but do not use the "clear and convincing" formula. *See, e.g., Meanel v. Apfel*, 172 F.3d 1111, 1113–14 (9th Cir.1999); *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir.1998); *Chavez v. Department of Health and Human Services*, 103 F.3d 849, 853 (9th Cir.1996); *Byrnes v. Shalala*, 60 F.3d 639, 641–42 (9th Cir.1995); *Moncada*, 60 F.3d at 524; *Orteza v. Shalala*, 50 F.3d 748, 749–50 (9th Cir.1995) (per curiam); *Flaten v. Secretary of Health and Human Services*, 44 F.3d 1453, 1464 (9th Cir.1995).

The "clear and convincing" language appears to have been derived from *Swenson v. Sullivan*, 876 F.2d 683 (9th Cir.1989), which states that "[t]he Secretary's reasons for rejecting excess symptom testimony must be clear and convincing if medical evidence establishes an objective basis for some degree of the symptom and no evidence affirmatively suggests that the claimant was malingering." *Swenson*, 876 F.2d at 687 (citing *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir.1984)). In *Gallant*, however, the court did not hold, or even affirmatively state, that an ALJ is required to provide "clear and convincing" reasons for rejecting excess pain testimony whenever there is no evidence of malingering. Instead, the court merely observed that no witness had testified that the claimant was malingering, that "[n]o clear and convincing reasons were provided by the ALJ" for his rejection of the claimant's testimony, and that the evidence relied on by the ALJ for his credibility evaluation was "insubstantial." *Gallant*, 753 F .2d at 1455, 1456.

*Bunnell* did not cite either *Gallant* or *Swenson*, and neither *Bunnell* nor the cases it did cite with approval (that is, *Cotton*, *Varney*, and *Gamer*) use the "clear and convincing" formula. It thus appears that the "clear and convincing" standard is an unwarranted elaboration of the substantial evidence standard of review, and that it was not part of the *Cotton* test adopted in *Bunnell*, where the en banc court attempted to clarify the

Turning to the ALJ's decision in this case, the Court finds the ALJ did in fact make specific findings supported by the record in explaining why she disregarded Plaintiff's subjective complaints. First, the ALJ found Plaintiff's subjective complaints were not supported by the medical evidence. (Doc. 12-3 at 24-25). While an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain, *see Rollins*, 261 F.3d at 856-57; *Fair*, 885 F.2d at 602, the lack of objective medical evidence supporting the claimant's claims may support the ALJ's finding that the claimant is not credible. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2003). The absence of factors indicating the existence of severe pain, including limited range of motion, muscular atrophy, weight loss, or impairment of general nutrition, as in this case, can support an ALJ's credibility determination. *See Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988) (citing *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987)).

While Plaintiff alleged limitations in lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, hearing, climbing, seeing, memory, completing tasks, concentration, understanding, following instructions, using her hands, and getting along with others (Doc. 12-3 at 24), there was no medical evidence documenting any symptoms affecting her ability to reach, talk, hear, or see. In physical

---

law. Any difference between the standards may be more apparent than real. There does not appear to be any principled distinction between the two standards as they have been applied. To the extent that there is or may be a conflict, however, *Bunnell* must control since it was an en banc decision. Accordingly, this Court will adhere to *Bunnell's* requirement that the ALJ make "specific findings" supported by the record to explain his credibility evaluation, rather than imposing the arguably more exacting "clear and convincing" requirement suggested by *Morgan* and its predecessors.

*Ballard v. Apfel*, No. CV 99-2195-AJW, 2000 WL 1899797, at *2 (C.D. Cal. Dec. 19, 2000).

examinations Plaintiff had normal range of motion in all of her joints in her upper extremities.  (Doc. 12-9 at 35-42).  As discussed above, *see supra* Section III.B.1, the medical evidence showed favorable functional findings of a nontender neck with painless ranges of motion, full ranges of motion of all joints, including full hip and knee ranges of motion, nontender wrist, elbow, shoulder, hip, knee, and ankle ranges of motion, and the ability to produce neat penmanship, as well as more general but nonetheless important findings of the absence of acute or only mild distress, nontender extremities, the absence of shoulder, elbow, hand, knee, or ankle erythema or edema, and the absence of extremity joint synovitis.   (Doc. 21 at 8-9) (citing medical assessments performed by No Appointment MD (Doc. 12-9 at 87-98), Camelback Medical Plaza (Doc. 12-9 at 35-42), Dr. House (Doc. 12-9 at 80-85), and Dr. Nolan (Doc. 12-11 at 4-8)).  Further, X-rays revealed only early, mild hip and knee osteoarthritis, and a normal left clavicle.  (*Id*. at 9).  *See Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (affirming credibility of ALJ's finding based in part on minimal objective evidence).

Second, the ALJ also found Plaintiff was noncompliant with treatment recommendations.  (Doc. 12-3 at 24-25).  "[U]nexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" is a relevant factor in assessing credibility of pain testimony.  *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir.1991); *see also Meanal v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ may consider Social Security disability claimant's failure to follow treatment advice as a factor in assessing Social Security disability claimant's credibility).   Mental health providers also noted numerous missed appointments (Doc. 12-9 at 12, 14, 32); (Doc. 12-10 at 77, 103-04, 106), including noting on April 24, 2007, that Plaintiff had not been seen since January 31, 2007 (Doc. 12-8 at 51), on February 28, 2008, that Plaintiff had not attended an appointment since January 18, 2008 (Doc. 12-9 at 29), and on September 11, 2008, that Plaintiff had not been since April 15, 2008 (Doc. 12-10 at 52).  Similarly, more than one provider noted that Plaintiff failed to obtain ordered laboratory blood studies.  (Doc. 12-8 at 3); (Doc. 12-9 at 6).

Third, the record also contained evidence of exaggeration.  In weighing credibility, the ALJ may consider evidence that a claimant exaggerated her symptoms when evaluating the claimant's subjective complaints of pain.  *See Hall v. Astrue*, No. CV 12-3494 JC, 2012 WL 3779080, at *4 (C.D. Cal. Aug. 31, 2012); *Jones v. Callahan*, 122 F.2d 1148, 1152 (8th Cir. 1997).  As the ALJ expressly noted in her decision (Doc. 12-3 at 22), Plaintiff claimed that her condition affected her abilities to even reach, talk, hear, or see, although, there was no evidence of limitations in these areas.  To the contrary, there was ample evidence that Plaintiff had no difficulty in these areas.  *See supra* Section II.C.

Plaintiff asserted there was evidence documenting symptoms affecting her inability to reach.  However, examinations revealed a nontender neck with painless ranges of motion (Doc. 12-9 at 89, 91); the absence of shoulder erythema or edema (Doc. 12-8 at 4); and nontender shoulder ranges of motion (Doc. 12-9 at 38-39, 41, 102); (Doc. 12-11 at 7), or full ranges of motion of all joints despite reported pain (Doc. 12-8 at 4). Plaintiff's own lay witness reported that Plaintiff's condition did not affect her ability to reach.  (Doc. 12-7 at 17).  Further, Plaintiff asserted that her depression affected her speech.  However, her own treating mental health providers repeatedly noted normal, articulate speech.  (Doc. 12-8 at 30, 41, 52-53); (Doc. 12-9 at 7, 9, 83); (Doc. 12-10 at 53, 77).  Finally, Plaintiff also asserted that her mental condition affected her hearing and seeing due to auditory and visual hallucinations.  While Plaintiff reported such symptoms to them, Plaintiff's treating mental health providers never recorded any objective indications of such.

Fourth, as the ALJ expressly noted in her decision (Doc. 12-3 at 23, 25), and as discussed above, *see supra* Section II.B.1, psychiatric and pain medications were effective.  *See Warre*, 439 F.3d at 1006 (impairment which can reasonably be alleviated by treatment cannot serve as basis for finding of disability).

Fifth, the ALJ found Plaintiff's daily activities undermined her subjective complaints (Doc. 12-3 at 24-25).  *See Matthews*, 10 F.3d at 679-80 (Ninth Circuit Court

of Appeals upheld ALJ's rejection of claimant's subjective complaints where ALJ found claimant's performance of daily activities like housecleaning, light gardening, and shopping undermined claimant's assertion of disabling pain.).  Plaintiff cared for her own personal needs, albeit with effort (Doc. 12-7 at 14, 20-21, 56); (Doc. 12-8 at 34), performed at least limited household chores (Doc. 12-3 at 43, 48); (Doc. 12-7 at 14, 22); (Doc. 12-8 at 34), prepared simple meals (Doc. 12-7 at 14, 22), swam for exercise (Doc. 12-8 at 50); "ke[pt] up with her home [and] family" (Doc. 12-7 at 14), possessed a driver's license and drove during the relevant time period (Doc. 12-3 at 50); (Doc. 12-8 at 83), performed at least limited shopping (Doc. 12-7 at 15, 23), traveled out of state to be with ill relatives (Doc. 12-9 at 73, 75); (Doc. 12-10 at 106), and planned to attend church regularly (*id*. at 43).  Plaintiff also performed childcare for her grandchildren (Doc. 12-8 at 34-35).  *See Conley v. Astrue*, 471 Fed. App'x 758, 759 (9th Cir. 2012) (unpublished) (Social Security disability claimant's activities that included child care constituted legally sufficient reason for discounting subjective complaints); *Rollins*, 261 F.3d at 857 (Social Security disability claimant's pain allegations undermined by activities that included attending needs of two young children).

Plaintiff cites *Fair v. Bowen*, 885 F.2d 597 (9th Cir. 1989), for the proposition that performance of activities that do not transfer to the grueling pace of a work environment do not impugn the integrity of claimed disability.  (Doc. 15 at 21).  However, in *Fair*, the Ninth Circuit Court of Appeals affirmed the Commissioner's decision discounting the claimant's subjective complaints based in part on his daily activities, where the ALJ found the claimant had remained capable of caring for all of his own personal needs, performing his own routine household maintenance and shopping chores, riding public transportation, and driving his own automobile.  885 F.2d at 604.  These are similar to the daily activities that Plaintiff acknowledges performing.  If anything, the circumstances in *Fair* support Defendant's argument.

The Court finds the ALJ's credibility finding was a "reasonable interpretation" of the evidence and was supported by substantial evidence in the record, accordingly, "it is

not [the Court's] role to second-guess it." *Rollins*, 261 F.3d at 857 (citing *Fair*, 885 F.2d at 604). Therefore, the ALJ did not err in rejecting Plaintiff's subjective complaints.

**D.     Whether the ALJ Properly Weighed Third Party Reporting**

Finally, Plaintiff argues that he ALJ failed to properly weigh the testimony of Plaintiff's father-in-law. (Doc. 15 at 23-24). As the ALJ noted, Plaintiff's father-in-law alleged that Plaintiff has limitations in lifting, squatting, bending, standing, walking, sitting, kneeling, talking, hearing, stair climbing, seeing, memory, completing tasks, concentration, understanding, following instructions, and using her hands. (Doc. 12-3 at 25). When an ALJ discounts the testimony of lay witnesses, "he or she must give reasons that are germane to each witness." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

In rejecting Plaintiff's father-in-law's statements the ALJ explained that his statements were similar to Plaintiff's subjective complaints and reported limitations and that his statements were not credible for the same reason, because the statements were inconsistent with the evidence in the record. (Doc. 12-3 at 25).

In *Valentine*, the Ninth Circuit Court of Appeals found that the ALJ gave germane reasons for discounting the testimony of a claimant's spouse by rejecting the spouse's lay testimony for the same reasons the ALJ rejected the claimant's own subjective complaints. The Court of Appeals explicitly made this finding because the spouse's testimony was similar to the testimony given by the claimant. 574 F.3d at 693-94. The Court of Appeals explained that because the ALJ provided valid reasons for rejecting claimant's own subjective complaints, and "[the spouse's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting the spouse's testimony" by rejecting that testimony for the same reasons. *Id*. at 694.

In this case, as discussed above, *see supra* Section II.C, the ALJ gave valid reasons for rejecting Plaintiff's own subjective complaints and the ALJ referenced those reasons as the basis for also rejecting Plaintiff's father-in-law's statements. *See* (Doc. 12-3 at 25). Therefore, the ALJ gave germane reasons for rejecting the lay statements of

1    Plaintiff's father-in-law and did not err in how she rejected those statements.

2    **IV.    CONCLUSION**

3         Accordingly, the ALJ did not err in finding that Plaintiff was not disabled within

4    the meaning the Social Security Act.

5         Based on the foregoing,

6         **IT IS ORDERED** that the decision of the Administrative Law Judge is

7    **AFFIRMED**.

8         **IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment

9    accordingly.  The judgment will serve as the mandate of this Court.

10        Dated this 29th day of April, 2013.

11

12

13

14    _____
                James A. Teilborg
15          Senior United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28